JACOB BASTIAN, Respondent, *v.* THE KEYSTONE GAS COMPANY, Appellant.

*Gas explosion — agreement that the gas company shall not be liable for damages "from the use of the gas," construed — care required in testing the main — newly-discovered evidence.*

Where an explosion of natural gas occurs in the kitchen of a house by reason of the negligence of an employee of the gas company in leaving open or imperfectly closing the gas main, with which the company insisted upon making all connections, no gas being at the time in actual use in the house, and no provision for its use then existing in the kitchen, the company is not relieved from liability for the consequences of the explosion by a clause indorsed on the application made by the tenant to the company to the effect that the company was not to be "held liable for damages to persons or property resulting from explosion or fire, or for any other damages whatsoever arising or occurring from the use of the gas" — the words "use of the gas" being properly construed to limit and control all the preceding words in such clause.

The fact that the company's gasfitter tested the kitchen main, after he turned on the gas at the time when he connected the sitting room, by applying his nose to a hole in the kitchen floor over the main, does not establish a full performance of duty on the part on the company, where it appears that other well-known tests usually applied were not made.

A motion for a new trial made upon the ground of newly-discovered evidence will not be granted where the evidence is cumulative, and might by reasonable diligence on the part of the moving party have been procured upon the trial.

APPEAL by the defendant, The Keystone Gas Company, from a judgment of the Supreme Court in favor of the plaintiff, entered in the office of the clerk of the county of Cattaraugus on the 12th day of October, 1896, upon the verdict of a jury for $2,650; also from an order entered in said clerk's office on the 12th day of October, 1896, denying the defendant's motion for a new trial made upon the minutes, and also from an order made at the Cattaraugus Special Term and entered in said clerk's office on the 22d day of September, 1897, denying the defendant's motion for a new trial made upon the ground of newly-discovered evidence.

*John G. Milburn* and *Charles S. Cary,* for the appellant.

*J. H. Waring,* for the respondent.

FOLLETT, J. :

This action was begun March 6, 1893, to recover damages for the loss of service of the plaintiff's wife, the expenses of her cure, occasioned by personal injuries sustained by her ; and also for the loss of goods caused, it is alleged, by the negligence of the defendant. The plaintiff recovered a verdict for $2,650 damages.

The defendant is a domestic corporation engaged in supplying natural gas for lighting and heating buildings in the city of Olean. Augustus T. Eaton is the owner of No. 11 Buffalo street, a dwelling house about twenty-three feet wide and twenty-seven feet deep, with an addition in the rear fourteen feet square, called a lean-to and used as a kitchen. There is a cellar under the main part of the house, but none under the kitchen, which is not underpinned, and the floor of which is some inches above the ground. Boards extend from the sills of the kitchen to the ground. The house was built in 1888 or 1889 by the present owner, and was plumbed for natural gas for lighting and heating. For about five years before November 11, 1892, it was occupied by Andrew Peterson, a tenant of the owner. During his occupancy natural gas was used for heating the house, including the stove in the kitchen. It was supplied through a pipe from the street entering through the front cellar wall, and was carried a few inches underneath the floors and extended through the rear wall of the upright part and under the kitchen. From the end of this pipe under the kitchen a piece of pipe extended upward, at right angles with the main pipe, through the kitchen floor and was annexed to the kitchen stove. When Peterson vacated the house (November 11, 1892), an employee of the defendant, Thomas Doyle, shut off the gas at the street and disconnected the stoves. Mr. Peterson claimed to own the perpendicular pipe extending from the main to the kitchen stove which was removed by Doyle and taken away by Peterson. Thomas Doyle, the defendant's gasfitter, testified that he screwed this pipe out of the main, which was about eight inches below the kitchen floor and suspended by a wire. He testified that there was a loose board in the kitchen floor which he readily removed, and after the perpendicular pipe had been taken away he plugged the opening in the main by screwing in an iron plug. In January, 1893, the plaintiff rented the house, and January 24, 1893,

he signed a written application to the defendant to have the house supplied with gas for the purpose of lighting and heating it. Doyle was still a gasfitter employed by the defendant, and was sent by it on that day to make connections between the pipe and the stove in the sitting room. The plaintiff at that time stated that he knew nothing about the use of gas for heating purposes, and that he would not have the kitchen stove connected until his wife should come. The gas on that day was connected with a stove for heating the sitting room, but with no other. The gas was turned on and lighted in the sitting-room stove. January twenty-fourth, about nine o'clock in the evening, the plaintiff's family arrived at the house, which they occupied during the night. No kitchen stove was then in place. On the next day the plaintiff's goods were unpacked and distributed through the house. About two o'clock in the afternoon of that day, a wood-burning kitchen stove was set in the kitchen and connected with the chimney and a fire lighted in it. The use of the fire was discontinued about three o'clock in the afternoon. The kitchen had an outside door which was open most of the time during the day. About seven o'clock on the morning of January twenty-sixth the plaintiff's wife entered the kitchen and lighted a match for the purpose of starting a wood fire in the kitchen stove, and as soon as it was lighted an explosion occurred, severely injuring the plaintiff's wife, wrecking the kitchen and damaging the plaintiff's goods.

The plaintiff tried this case upon the theory that the explosion was caused by the defendant's gasfitter negligently leaving open the main which supplied the kitchen stove, when he disconnected Peterson's stove, November 11, 1892, and negligently failing to discover, January 24, 1893, when he connected the plaintiff's sitting-room stove with the main, that it was open. The defendant advanced no theory explanatory of the cause of the explosion, except that it was suggested that some one on the 24th or 25th of of January, 1893, opened the main extending under the kitchen floor, which theory, if such it can be called, is a highly improbable one and not supported by the evidence. No one had any interest in removing the plug which Doyle testified he placed in the main November 11, 1892. The plaintiff's kitchen stove was not fitted for gas, and he could not use it with gas until it should be. It is highly

improbable that the plaintiff, who had lived, as the evidence shows, in cities and villages where illuminating gas was generally used, was not familiar with the danger incident to gas flowing into a room, and that he would leave open a gas main underneath his house. The jury, under a charge eminently fair, full and clear, found that the defendant's employee left this main open, or insecurely closed, November 11, 1892, when he disconnected Peterson's stove, or that he opened the main January 24, 1893, for some purpose and left it unclosed or insecurely closed. The verdict that the accident was caused by the negligence of Doyle, the defendant's employee, is amply sustained by the evidence. It is conceded that the defendant, by its rules, insisted that all connections between house mains and stoves should be made by it, and that the disconnection of November 11, 1892, and the connection of January 24, 1893, were made under the direction of the defendant's superintendent, who sent defendant's gasfitter, Doyle, to do the work. Either act being negligently done, and that negligence causing the accident, the defendant was liable for the consequences unless, as it is claimed, it was protected by the 2d provision indorsed on the back of the application signed by the plaintiff, of which the following is a copy:

"2. The company shall use all reasonable care and diligence to furnish a sufficient supply of gas, but if the supply of gas should fail either partially or totally, either from failure of wells or bursting of pipes, or if prevented by legal proceedings, or for any cause beyond the control of the company, then the company is not to be held liable for any damages or loss resulting therefrom; *neither is it to be held liable for damages to person or property resulting from explosion or fire, or for any other damages whatsoever arising or occurring from the use of the gas.*"

It is contended that the last clause of this provision, printed in italics, exempts the defendant from liability for this explosion. This clause should be construed strictly against the party whose words they are. The conditions are referred to on the face of the application signed by the plaintiff, but there is no evidence that his attention was called to the conditions when he signed the application. The just construction of this clause is, that the defendant is not to be held liable for damages for accidents occurring from the use of gas; that the words "use of the gas" limit and control all the preced-

ing words of the clause. The explosion was not caused by the use of gas in its ordinary sense. When the explosion occurred no gas was burning in the dwelling; the gas connected with the sitting-room stove was not lighted. The accident was occasioned, not by the plaintiff's use of gas in the dwelling, but by the non-closing or imperfect closing of the main under the kitchen. The jury having found that the explosion was caused by the negligence of the defendant's employee in leaving open or in imperfectly closing the main, the defendant cannot escape liability under this clause. The defendant expressly insisted on its right to make all connections between house mains and stoves, and having assumed this duty it was bound to exercise due care in making these connections, and in seeing that openings in the house mains were so tightly closed as to prevent the escape of gas into the dwelling; and for its negligent failure to perform this self-imposed duty it is liable.

The court did not err in refusing to instruct the jury that in case Doyle plugged the kitchen main November 11, 1892, and after turning on the gas January 24, 1893, applied his nose to the hole in the kitchen floor to ascertain whether gas was escaping, the defendant had performed its duty to the plaintiff. It was the duty of the defendant to exercise great care to prevent the escape of gas from the pipes within its control into the dwelling. It appears that there were other well-known tests usually applied which were not made. Whether what Doyle testified that he did was all he should have done was a question for the jury. Even if Doyle plugged the pipe November 11, 1892, but so imperfectly that when gas was turned on to the house through the street connection it escaped into the kitchen by reason of imperfect plugging, the jury was authorized to find that the defendant was negligent. Whether cement or paint was applied to the plug, so as to make a tight connection, does not appear.

The defendant moved for a new trial on the ground of newly-discovered evidence, which motion was denied, and from that order it appeals. The newly-discovered witness is William Whelply, who states in his affidavit that he has been a resident of Olean for seventeen years, and for some years one of the constables of the city; that in December, 1892, and January, 1893, he was well acquainted with No. 11 Buffalo street; that he noticed that the house was

vacant, and his attention was called to the fact that boys were entering it and were throwing stones and breaking windows of vacant premises near the house. He states that Mr. Eaton, the owner of No. 11, talked with him about looking after the boys, and requested that he get their names and report them. Eaton, in his affidavit, states that he has no recollection of having any such conversation with Whelply, and that the house was securely closed and locked. Whelply states that, just before dark on the evening before the explosion, he saw boys at the back of the house ; that he went there and the boys went away ; that he saw the kitchen door open, and entered the kitchen and saw boxes of goods standing about the room ; that he saw a board twelve or fourteen inches in length, which formed part of the floor, had been taken up ; that he looked into this hole for the purpose of seeing what there was there, and he saw the end of a gas pipe, a few inches below the floor, which was plugged with an iron plug screwed into the main. This he saw distinctly. This was just before dark. Other witnesses testified on the trial that it was dark underneath the kitchen floor. Whelply does not testify that he saw or heard any person about the house. At this time the plaintiff was in the house, but did not see or hear Whelply. Other witnesses who were at the house testify that they neither saw nor heard Whelply. The next morning Whelply heard of the explosion and he went to the house, but his interest in the premises was not sufficient to cause him to make any investigation, and he paid no attention to the matter. He states in his affidavit that he knew actions were pending against the defendant for damages caused by the explosion, but he never disclosed the fact within his knowledge until after the trial, because he did not know it was important and did not wish to be troubled as a witness. It appears by his own affidavit that he subpœnaed the witnesses for the plaintiff in this case, so that his attention was called to the fact that the action was to be tried, and yet he remained silent during all the period that the different theories as to the cause of the explosion were being discussed, and disclosed his knowledge to the defendant's general manager at some time during the month following the trial. If Whelply's statements are correct, that on the evening of the day before the explosion that plug was in place, it destroys the defendant's theory that the plug had been removed by some person other

than its gasfitter after January 24, 1893, and tends to prove that the plug must have been so insecurely fitted as to permit the escape of gas into the house, for it is not probable that the plaintiff during the night of January twenty-fifth and twenty-sixth interfered with the plug. There was no motive for his doing it. The evidence of Whelply is at most cumulative, and the defendant was not diligent in not finding it out before the trial.

The judgment and order denying a motion for a new trial on the minutes should be affirmed, with costs, and the motion for a new trial on the ground of newly-discovered evidence should be affirmed, with ten dollars costs and printing disbursements.

All concurred.

Judgment and order denying motion for a new trial affirmed, with costs, and order denying motion for a new trial on the ground of newly-discovered evidence affirmed, with costs.